**In the Matter of WILLIAMS, Terry and Janienne, Petitioners.**

**No. 47984.**

Missouri Court of Appeals,
Eastern District,
En Banc.

June 13, 1984.

Allan F. Stewart, Clayton, for appellants.

Martin Schiff, Clayton, for guardian ad litem.

CRANDALL, Judge.

Appellants Terry and Janienne Williams appeal from a juvenile court order denying their petition for transfer of custody and adoption. After an opinion in this case was handed down by a division of this court, a rehearing was granted. Portions of this opinion are borrowed from the original opinion written by Judge Karohl. We reverse and remand.

The Williamses sought to adopt Baby Girl B who was born July 30, 1983. Prior to the birth Baby Girl B's natural mother decided to give her child up for adoption. Appellants learned of the mother's intentions from a friend and contacted an attorney concerning the procedure to adopt the child. Appellants never learned the identity of the natural parents. On September 1, 1983, in accordance with a pre-arranged plan, the Williamses filed a petition for transfer of custody of Baby Girl B to them and for her subsequent adoption. The court appointed a Guardian Ad Litem for the child and directed that a study be made on the suitability of the child and appellants for adoption. The natural parents' rights were voluntarily terminated on October 27, 1983. Since birth Baby Girl B has lived with a foster family under the supervision of the Missouri Division of Family Services. A social worker employed by a licensed adoption agency who performed a home study testified favorably for the appellants. The juvenile court denied appellants' transfer of custody petition without setting forth any reasons for the decision. There was no request for findings of fact and not one was made. Appellants contend that the denial of their petition was an abuse of discretion as there was no evidence to support the court's decision and that the decision was against the weight of the evidence presented.

■ Before reaching the merits of this case we first consider whether the juvenile court order denying the transfer of custody is an appealable order. The court denied only the transfer of custody and did not mention the subsequent adoption. The order is a final judgment because it disposes of all the parties and issues in the case. § 512.020, RSMo (1978). As noted in *Matter of M.D.H.*, 595 S.W.2d 448, 449 (Mo. App.1980), denial of transfer of custody, which is a prerequisite to this type of adoption, disposes of the adoption issue. Here the court order specifically denies the transfer of custody which has the effect of denying the petition for adoption. As all the issues are resolved, the order is appealable.

We turn now to the merits of this case. The record reflects that the Williamses have a stable and strong family relationship. They have been married twelve years. They have two children, a boy and a girl, whose ages at the time of the hearing were seven and three, respectively. Terry Williams testified that he thought "they're kind of looking forward to [the adoption]." Terry and Janienne are both in their mid-30's. All members of the family are in good health. Terry's parents and Janienne's mother, the prospective grandparents, are supportive of the adoption.

The family resides in Cape Girardeau, Missouri. They live in a four bedroom house which has ample room for another child. Terry Williams is employed by Southwestern Bell as manager of a Residential Service Center. His annual salary is clearly sufficient to provide for the family.

■ In a custody or adoption proceeding, the welfare of the child is the primary and paramount consideration. *In re Drew*, 637 S.W.2d 772, 778 (Mo.App.1982). Unlike other litigation where the judge is a neutral arbiter, in this type of proceeding the court has an interest in determining what is in the best interests of the child. Thus, a greater burden is imposed on the trial court than simply according all parties a fair trial. It is for that reason that we presume that the decision in such a proceeding was motivated by what the judge believed was best for the child, and we accord the judge's determination greater deference than in other cases. *In re Drew*, 637 S.W.2d at 778. The fact that the petitioners in an adoption proceeding are financial-

ly stable, morally and physically fit, and able to furnish a home for the children "is not the end of the matter." *In Matter of B.J.K.*, 573 S.W.2d 382, 384 (Mo.App.1978). The suitability of the petitioners is merely a preliminary step in reaching the ultimate decision as to what is best for the child. Thus, the trial court is afforded wide discretion which must not, of course, be abused. *In Matter of Neusche*, 398 S.W.2d 453, 457 (Mo.App.1965).

■ While the trial court is accorded broad discretion and we must give great deference to its determination, its decision is still subject to appellate review. The ultimate question on appeal is whether the trial court's decision was a proper exercise of its discretion in determining the best interests of the child. There is nothing in the record of this case to support the trial court's denial of the transfer of custody. All of the evidence adduced was favorable to the request of the petitioners. When the discretion of the trial court is exercised without any discernible basis in the record, we, as an appellate court, are unable to conclude whether the decision was in fact in the best interests of the child. Even when we are limited, on review, to determining whether the trial court abused its discretion, the record must provide some basis for that determination. This record fails to do so.

Section 453.030.1, RSMo (Supp.1983) provides that approval for an adoption "shall be given or withheld as the welfare of the person sought to be adopted may, *in the opinion of the court*, demand." (Emphasis added.) Here we are not presented with an opinion of the court, but simply an order that is unsupported by the record.

We therefore reverse this case and remand it to the trial court. On remand, the court may grant the transfer of custody or, if necessary, reopen the case for a further hearing to amplify the record. The trial court shall then enter whatever order it deems appropriate, giving its opinion, as required by statute. Since the parties did not attempt to invoke Rule 73.01(a)(2), such an opinion may, but need not, take the form of findings of fact and conclusions of law.

STEWART, SIMON and GAERTNER, JJ., concur.

SMITH, J., concurs in separate concurring opinion.

SNYDER, J., concurs in separate concurring opinion by SMITH, J.

KAROHL, J., dissents in a separate opinion.

DOWD, C.J., and CRIST, J., dissent and concur in dissenting opinion by KAROHL, J.

SMITH, Judge, concurring.

I fully concur with the majority opinion. I add this opinion simply to address certain of the contentions advanced by the dissent.

First, it appears to me that whenever the rights of the natural parents have been terminated, whether by consent or otherwise, it is in the best interests of the child that it be adopted. The court's discretion therefore does not run to whether an adoption should take place but whether the adoption as proposed is in the best interests of the child.

Second, I am unaware of any doctrine that requires a court to determine that the placement sought is in the "best" home available as indicated by the dissent. The function of the juvenile court is not to compare a series of adoptive parents and homes and place the child in the one it determines is "best" (if in fact any such determination can objectively be made). Its function is to determine whether the proposed adoptive parents provide a good stable home and environment for the child. A natural child is not even guaranteed that much. The record here clearly demonstrates such a home and environment in this case.

Third, I find nothing sinister about the placement here. There has been no violation of any law of Missouri including Sec. 453.110, RSMo 1978. The child has been in the custody of the Missouri Division of

Family Services since birth. Payment of the delivery expenses of the natural mother and medical care for the newborn is commonly required of adoptive parents whether the placement is through a private or a public agency. Although the proposed adoptive parents tendered $90 to the agency for medical bills that check was never cashed and was to be returned to them. They understood that subject to court approval they would pay medical expenses.

Fourth, there is no common friend of the natural and adoptive parents. The adoptive parents have a friend who has a friend who had "heard" of an unmarried girl who wanted to give up her baby for adoption. The adoptive parents advised their friend to contact a lawyer and give him the girl's name. The lawyer in turn contacted the natural mother. That lawyer did not represent the adoptive parents after the child's birth and neither received nor will receive any money for his services. The adoptive parents do not know the identity of the natural parents.

Fifth, I cannot accept the implication that the agency involved here, licensed by the State of Missouri as a child placement agency, is to be suspected of inadequately investigating the placement or reporting it in a biased fashion to the court.

I find nothing in this record to support the exercise of discretion to deny placing custody in this couple and therefore concur in the majority opinion.

KAROHL, Judge, dissenting.

I respectfully dissent. In my view the trial judge was authorized by statute to make the difficult decision of granting or denying a transfer of custody of Baby Girl B to petitioners as a preliminary step to a request for adoption. In denying the transfer of custody the court determined that the welfare of the child did not demand the transfer. Section 453.030.1, RSMo 1978 provides that approval of the court is required "as the welfare of the person sought to be adopted, in the opinion of the court, demand." The majority opinion adds to that section words that are not

there, to wit, the trial court must give reasons for withholding consent even where no findings or conclusions were requested.

It was for the petitioners and not the trial court to bear the burden of justifying a decree of transfer of custody. *In Matter of Neusche*, 398 S.W.2d 453, 458 (Mo.App. 1965). On appeal the petitioners must demonstrate that the trial court abused its broad discretion in denying the transfer of custody. *Id.* at 457. The majority does not hold that the trial court abused its discretion. It merely holds that the record is insufficient to make any decision on possible abuse. Reversal and remand is not justified on this basis. Rule 84.14.

The majority opinion ignores the provisions of Rule 73.01(a)(2) which provides, *inter alia:*

All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

The trial court therefore found as a fact that the transfer of custody was not in the best interests of the infant.

The majority opinion disregards our decision in *Nuesche.* We there said:

The reason we must accord the trial judge this broad discretion in the matter of the transfer of custody of the child is that he has an extreme advantage over a reviewing court, in that he can observe the participants before him, can observe their demeanor and conduct and intelligence and any other characteristics, which in no way can ever be reflected in the cold printed record which we review and certainly he knows more about the case in all of its aspects than we do. Because of the trial judge's better position to observe these qualities and characteristics, we deem it our duty as the reviewing court to grant greater deference to his determination in these matters involving the custody of a minor child than perhaps we would in cases that involve mere material possessions.

We also indulge the presumption that his decision was motivated by what he believed was best for the child. (citations omitted).

In the case of *In re Hyman's Adoption*, Mo.App., 297 S.W.2d 1 the court quoting from another case, said:

The court held that the court of appeals is required to arrive at its own conclusion as to what disposition of the child's custody will be for its best interest, but due regard must be given to the opportunity of the trial court to judge the credibility of witnesses, and his judgment will not be set aside unless clearly erroneous and in conflict with the clear preponderance of the evidence disclosing manifest abuse of judicial discretion.

398 S.W.2d 453 at 457.

The majority opinion overlooks the principle that it is for the trial court to believe or disbelieve all of the evidence offered by the petitioners. As the licensed adoption agency was hired by petitioners it was not independent in its determination of "... the physical and mental conditions and *antecedents* of such child for the purpose of ascertaining whether the child is suitable for adoption by ... petitioners and of the suitability of the ... petitioners as parents for the child." § 453.070, RSMo 1978. (emphasis added). The agency report makes no mention of the possible effect of the antecedent fact that the petitioners and the natural mother were linked by a common friend.

Further, the majority opinion abrogates the presumption that the decision of the lower court judge was motivated by a concern for the best interest of the child, *In Matter of Neusche*, 398 S.W.2d 453, 457 (Mo.App.1965), and was based on a careful review of all the evidence. *Brooks v. Division of Children's Services*, 411 S.W.2d 276, 281 (Mo.App.1967).

Finally, without passing judgment on the merits of the trial court judgment, there are reasons discernible from the record to support that decision. This was a private placement. The petitioners learned of the future birth from a friend who knew the natural mother. There was some evidence that the petitioners in good faith advanced money for the payment of medical expenses and to protect the natural mother from being hassled by the provider of such care. The testimony at trial on this issue is confusing. The one individual who the parties agreed knew the details of the payment of expenses, the director of the adoption agency, did not testify.

Private placements are discouraged to insure that the child and potential adoptive parents are suitable to each other prior to adoption. *See* § 453.110, RSMo 1978; Joan M. Krauskoppf, Missouri Adoption Law and the Proposed Uniform Adoption Law, 26 Journal of the Missouri Bar 172, 179 (1970).

The relationship between the natural mother and the petitioners through a friend of each leaves open the question of further contact or future confrontation. We have held that this possibility may not be in the best interests of an adoptive child. *In Matter of Neusche*, 398 S.W.2d 453, 459 (Mo.App.1965), citing *In re K.W.S.*, 370 S.W.2d 698, 703 (Mo.App.1963). This possibility is a factor that the court may consider as an antecedent circumstance.

In terms of deciding what is in the best interests of the child the nature of a private placement is such that it may be discouraged for another reason. It would appear that the petitioners are fine people, good parents of two children, and that they offer a fine home and family. But where there is no evidence by which to compare their home with any other that may also be available there is no basis to confidently declare them to offer the best available home and family for the child. The trial court cannot be held to have abused its broad discretion in denying a transfer of custody to a good home if, in its opinion, it is not shown to be the placement the welfare of the child demands. § 453.030.1., RSMo 1978.

I find it significant that the Missouri Division of Family Services (D.F.S.) was not called upon to contribute evidence. In

terminating the natural parent's rights in accordance with § 211.091 and § 211.452, RSMo 1978 the court transferred custody to D.F.S. and requested a recommendation concerning transfer of lawful custody to the best available adoptive home. No such recommendation was received.

I would affirm the opinion of the trial court. Although it is not before us, my view of the law of this case would not require reversal of an order approving a transfer of custody based on the same evidence.